UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

CIVIL ACTION NO: 0:09-CV-0053-CMC

| | |
|---|---|
| Bobbie M. Sedberry and John C. Sedberry, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>DonB Aircraft International, Inc. and )<br>Donald R. Bennett, )<br>)<br>Defendants. )<br>) | **MEMORANDUM IN SUPPORT OF<br>PLAINTIFFS' MOTION IN LIMINE** |

Plaintiffs make this Motion *in Limine* with regard to two pieces of anticipated testimony, the first being a statement made by the Federal Aviation Administration, and the second being a statement made to the Defendant in a telephone conversation with an unknown person regarding horsepower modification. We set these out separately below.

**1.     The Statement from the Federal Aviation Administration.**

As a result of the airplane crash on May 2, 2008, the Federal Aviation Administration conducted some sort of investigation into the crash. Within the files produced by the Defendants in this litigation, there are three documents related to this investigation. First, is a May 29, 2008 inquiry from the Federal Aviation Administration (FAA) to Defendant Bennett. (Exhibit 1 attached.) Second, is the two-page response from the Defendant to the FAA. (That is attached as Exhibit 2.) Finally, there is a June 18, 2008 communication from the FAA to Defendant Bennett. The unexplained

conclusion is the following, "This letter is to inform you that the investigation did not establish a violation of the Federal Aviation Regulations, and you may consider the matter closed." (Exhibit 3.) At least one of the experts presented by the Defendants, Dwight Law, recites in his report that, "An investigation conducted by the FAA subsequent to the engine failure incident, found that Mr. Bennett did not violate any federal aviation regulations." Our Motion *in Limine* is to prohibit Mr. Law or any other of Defendants' witnesses from referring to the investigation or the summary shared by the FAA.

At issue in this case is whether the Defendants properly repaired the aircraft engine or whether some failure on their part caused the crash. Hearsay about what someone else might have concluded is not appropriate, and it is not made admissible merely because some expert would like to refer to it. Rule 703 of the Federal Rules of Civil Procedure explains the allowable bases of expert testimony. The text of Rule 703 reads in full:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value

in assisting the jury to evaluation the expert's opinion substantially outweighs their prejudicial effect.

Rule 703 departs from the common law and permits an expert to form an opinion based on facts or data such as hearsay that are not admissible in evidence. However, to ensure reliability, Rule 703 utilizes a reasonable reliance standard, which requires the court to make two inquiries: first, whether experts in the field in fact rely upon the facts or data relied upon, and second, if so, is the reliance reasonable. *Avondale Mills, Inc. v. Norfolk S. Corp.*, No. 1:05-2817-MBS, 2008 WL 6953956, at *3 (D.S.C. Feb. 21, 2008)("Prior to the offering of testimony regarding the . . . report by any of Defendants' experts, the court would need to make a determination regarding the reasonableness of the reliance."). Wright & Gold, 29 Fed. Prac. & Proc., *Bases of Expert Opinion* § 6274 at 334. "A district court may properly exclude the testimony of an expert if that testimony lacks an adequate foundation or is not based on data reasonably relied upon by experts in a particular field." *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308 (5th Cir. 1990). "If the underlying data is so lacking in probative force and reliability that no reasonable expert could base an opinion on that data, then an opinion which rests entirely upon that data must be excluded." *Viterbo v. Dow Chem. Co.*, 646 F.Supp. 1420, 1424 (E.D. Tex. 1986). The inquiry into whether the standard is satisfied is made on a case-by-case basis. *Id*.

<u>FAA Reports Are Not of the Type Relied Upon By Aviation Mechanics</u>

Defendant bears the burden of establishing that the FAA Report is of a type that an expert in the field would rely upon in forming their opinions and inferences. *See In re Polygropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1356 (N.D. Ga.

3

2000)(plaintiffs adequately demonstrated frequent reliance on regression models by economists to explain changes in prices, thus allowing on regression models by economists to explain changes in prices, thus allowing reliance by expert). The testimony of Defendant's expert does not qualify for admission under Rule 703 because it is not of a type relied upon by experts in this particular field.

Defendant classifies its expert as an aviation mechanic expert, qualified to describe the processes of disassembly, inspection, and reassembly of engines in aircraft. The type of evidence an aviation mechanic would normally rely upon would include literature addressing aircraft maintenance and repair, including Lycoming engine manuals, with the end result being that this type of information could support and assist in reaching an opinion or inference of how aircraft <u>should be</u> repaired. However, Defendant's expert now seeks to rely upon the results of a post-accident investigation conducted by the FAA. This is not the type of report that would qualify as reasonably relied upon by aviation mechanics in rendering a professional opinion on how to repair an aircraft. The problem with Defendant's position lies in the fact that Defendant's expert is merely a testifying expert. He is a mechanic, not a collector of evidence.

The typical application of Rule 703 arises in the medical setting. Rule 703 as applied to physicians was explained in the Notes of the Advisory Committee on Proposed Rules, 56 FRD 183 (1972):

> [A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians, and other facts, hospital records and xrays. Most of them are admissible in

4

evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

Defendant's expert cannot be likened to a physician who normally relies upon a host of information to arrive at his opinions. Testifying experts may not just rely on any information they can garner which best advances the position they advocate. In this case, the information Defendant's expert relied on to reach his opinion, the FAA Report, is not of the type that aviation mechanics would rely upon in making a similar professional judgment and therefore should be excluded.

<u>Reliance on the FAA Report is Not Reasonable</u>

Any investigation conducted by the FAA is further put in doubt by the fact that the Plaintiffs do not know what materials were considered or what criteria were used in reaching any decision. Plaintiffs have twice submitted a Freedom of Information request to the FAA to determine what investigation was made and what criteria were considered in reaching any sort of conclusion. We have received no information which would allow us or the Court to evaluate that process. The FAA has not even seen fit to deliver to us the three letters attached to this Motion, which we received from the Defendants. The investigator has not been disclosed as an expert witness so that even if the investigator himself were called to trial and could fully explain all the steps he took and information he gathered, he could not offer the opinion which Mr. Law seeks to attribute to him. Yet, the Defendants here seek to cloak their opinions under the authority of a federal agency. Even assuming aviation mechanics rely on FAA reports,

Defendant's expert's reliance was not reasonable in this instance. Rule 703 does not afford automatic entitlement to proponents of expert testimony. *Univ. of Rhode Island v. A.W. Chesterton*, 2 F.3d 1200, 1218 (1st Cir. 1993). Rather, "Rule 703 requires the trial court to give careful consideration to any inadmissible facts upon which the expert will rely, in order to determine whether reliance is reasonable." *Id*. (internal quotations omitted); *see also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)("Rule 703 nonetheless requires courts to examine the reliability of those sources"). Courts have identified several factors for determining whether the basis for expert testimony is reasonable, including was the expert's basis published, was the basis subjected to peer review, was the expert's basis derived from sources that were impartial, was the basis for the opinion complete and logically sufficient, and was the opinion more than just a summary of another expert's opinion. Wright & Gold, 29 Fed. Prac. & Proc., *Bases of Expert Opinion* § 6274 at 341 – 42 (citing cases applying factors). For example, in *Nachtesheim v. Beech Aircraft Corp.*, 847 F.2d 1261, (7th Cir. 1988), the court rejected the plaintiff's contention that a FAA bulletin should have been admitted as a basis for their expert's opinion because the evidence was unreliable. The same holds true here.

The FAA Report on which Defendant's expert relies lacks the reliability necessary to support expert testimony. First, the Court lacks any evidence about the circumstances of its compilation to support a conclusion of trustworthiness. The FAA had its own purpose for conducting the investigation. *See In Re Air Crash Near Roselawn*, No. 95 C 4593, MDL 1070, 1997 WL 5772896, at *1 (N.D. Ill. Sept. 10, 1997)("The Court, specifically finds that all post-accident government actions in this case, including the FAA Airworthiness Directives   . . . , are reports which lack

6

trustworthiness because each government agency involved in the post-accident investigation was subject to different agendas and fact-finding methodology."). Additionally, the FAA Report is incomplete in that there is no supporting documentation or data for the findings of the FAA. *See University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 128 (1st Cir. 1993)(trial court did not err in excluding expert testimony where there was no supporting documentation to support expert's assessment). Given this incompleteness, there is simply no way for the Plaintiffs to effectively cross examine or impeach Defendant's expert with respect to the findings of the FAA. Moreover, an additional ground indicating the lack of reliability of his opinion is that fact that the opinion is nothing more than just a recitation of the finding of the FAA. *United States v. Lawson*, 653 F.2d 299, (7th Cir. 1981)("The Government could not, for example, simply produce a witness who did nothing but summarize out of court statements made by others."). Defendant's expert adds nothing to the report of the FAA. Therefore, this testimony is nothing more than the conclusion of the FAA dressed up and blessed as the opinion of the expert. This is not the intent of Rule 703. *See Avondale Mills, Inc. v. Norfolk S. Corp.*, No. 1:05-2817-MBS, 2008 WL 6953956, at *3 (D.S.C. Feb. 21, 2008) ("Rule 703 is not intended to . . . allow a witness, under the guise of giving expert testimony, in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.").

Defendant's expert opinion simply lacks the reliability necessary to support expert testimony. As an unsupported opinion, it does not serve the purpose for which it is offered, that is, to assist the jury.

7

<u>Assuming That Defendant Can Establish That His Expert Reasonably Relied On The FAA Report, the FAA Report Should Nonetheless Be Concealed From The Jury.</u>

Rule 703 provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion. *Avondale Mills, Inc. v. Norfolk S. Corp.*, No. 1:05-2817-MBS, 2008 WL 6953956, at *3 (D.S.C. Feb. 21, 2008). As stated in Rule 703, inadmissible evidence used in an expert's opinion is inadmissible for other purposes unless it satisfies a reverse-Rule 403 test, in which the "probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

Any probative value the FAA Report may have is substantially outweighed by the prejudicial effect of allowing disclosure of the FAA Report to the jury. The danger rests in the undue weight the jury may afford the conclusion of the FAA Report because it issues from a governmental agency. This danger is especially heightened because the conclusion reached by the FAA purports to settle a disputed issue at the center of the Plaintiff's claim. As one court has explained, governmental reports have an aura of special reliability.

> [B]ecause this documentary evidence is in the form or reports promulgated by agencies of the United States governments, its apparent 'official' nature is likely to cause a jury to give the evidence inordinate weight and for this reason, any probative value the evidence might have would be far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

TPGL 3129541v1

*Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (N.D. Miss. 1980) (excluding National Highway Safety Administration report). The Fourth Circuit Court has even recognized that a jury may place undue weight on a report simply because of its official nature. In *Martin v Cavalier Hotel Corp.*, 48 F.3d 1343, 1357-58 (4th Cir. 1995), the court upheld the trial court's exclusion of a state agency report "because of the prejudicial effect such an official report might have on the jury." *Id*.; *see also Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997)(excluding agency determination on the ground that the jury could attach undue weight to the determination).

Moreover, allowing the Defendant's expert to disclose to the jury the substance of the FAA Report exudes unfairness because, as explained previously, the report has not been shown to be trustworthy. There is no supporting documentation for the findings of the FAA, or to even determine what FAA regulations were considered. Plaintiffs have no way to cross examine or impeach the findings of the FAA. The prejudicial effect of the FAA report merits exclusion from the consideration of the jury.

FAA Reports Should Be Treated Like NTSB Accident Reports

Congress enacted 49 U.S.C. § 1154(b) as a bar to the use of reports issued by the National Transportation Safety Board ("NTSB") in civil proceedings for damages. Section 1154 (b) serves to prevent the use of NTSB reports in a manner that would encroach on the province of the judge or jury. *Hickson Corp. v. Norfolk S. Railway Co.*, 227 F.Supp.2d 903, 909 (E.D.Tenn. 2002). A number of courts have construed the statute to exclude only parts of the report which contain agency conclusions but to permit the admission of factual data. *Id*.; *see also Curry v. Chevron, USA*, 779 F.2d 272, 274 (5th Cir. 1985)(expert witness was permitted to base his conclusions on factual

portions of a NTSB report but was prohibited from using any conclusory statements in the NTSB report); *In Re Air Crash Near Roselawn*, No. 95 C 4593, MDL 1070, 1997 WL 5772896, at *1 (N.D. Ill. Sept. 10, 1997)(allowing expert witnesses to rely only upon non-conclusory facts contained in the NTSB report). The underlying principle for excluding NTSB accident reports is to protect the court and the jury from being improperly influenced by the conclusions and opinions reached by the agency. *See e.g. Lobel v. Am. Airlines, Inc.*, 192 F.2d 217, 220 (2d Cir. 1951)

At least one court has recognized that the admissibility of FAA and NTSB post-accident reports raise similar concerns such that the conclusions and findings of the FAA should be afforded the same exclusionary treatment:

> The Court, specifically finds that all post-accident government actions in this case, including the FAA Airworthiness Directives and Flight Safety Information Bulletins and the NTS Safety Recommendations, are reports which lack trustworthiness because each government agency involved in the post-accident investigation was subject to different agendas and fact-finding methodology which could undermine and confuse the jury's distinct function in this case. The functions of the Court and the jury must be preserved uninfluenced by the findings of government investigators . . . . Post-crash evidence is inherently subject to the various agendas of the parties who prepared it.

*In Re Air Crash Near Roselawn*, No. 95 C 4593, MDL 1070, 1997 WL 5772896, at *1 (N.D. Ill. Sept. 10, 1997).

There are no factual portions of the FAA Report upon which Defendant's expert could rely. Instead, the only portion of the FAA report that Defendant's expert cites is that portion which conclusorily states that the FAA's investigation did not establish a violation of the Federal Aviation Regulations. Therefore, like NTSB reports, conclusions issued by the FAA should be excluded for all purposes, and Defendant' expert should be prohibited from relying on the FAA report.

2. **Hearsay with Respect to Horsepower Modifications**.

The engine in the plane that crashed had been modified about 15 years before the crash to increase its performance. That modification was known by the owner, Mr. Sedberry, and shared with the Defendant before he undertook the repair. During the repair process, Mr. Bennett explains that he spoke with a Mr. Jenkins, who made the initial modifications in the mid-90s. Mr. Jenkins related to him that some of the changes, like the new pistons, had come from a company called Lycon. Mr. Bennett then called the switchboard at Lycon and was passed through to an unidentified person with whom Mr. Bennett discussed the modifications to the engine. That person told him that Lycon had no records that were that old, so he could not help or assist in determining what changes might have been made. As a result of that conversation, Mr. Bennett made a note indicating that the horsepower may have been increased into the range of 350 to 375 horsepower. (All this background in reflected in pages 102-106 and 113 and 114 of Mr. Bennett's deposition attached as Exhibit 4). Now, Dr. Charles Manning, one of the experts for the Defendants, wants to use that hearsay statement from an unknown person as proof that the horsepower was, in fact, increased into the range of 350 to 375 horsepower. Based on that "evidence", Dr. Manning then opines

that the modification made in the mid-1990s required the use of a larger bolt to hold the crankshaft gear in place, which omission contributed to the crash.

Our position is that Dr. Manning should not be allowed to rely upon hearsay from an unknown person to serve as his premise for establishing the actual horsepower of the modified engine. All testimony about that hearsay and in reliance thereon, should be precluded.

Respectfully submitted,

s/ W. Duvall Spruill
W. Duvall Spruill, 4269
DSpruill@TurnerPadget.com
Curtis L. Ott, 5939
COtt@TurnerPadget.com
Turner Padget Graham & Laney P.A.
P.O. Box 1473
Columbia, South Carolina  29202
Telephone:  (803) 254-2200

February 22, 2010

**ATTORNEYS FOR BOBBIE M. SEDBERRY AND JOHN C. SEDBERRY**