UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

CIVIL ACTION NO: 0:09-CV-0053-CMC

| | |
|---|---|
| Bobbie M. Sedberry and John C. Sedberry,<br><br>    Plaintiffs,<br><br>vs.<br><br>DonB Aircraft International, Inc. and Donald R. Bennett,<br><br>    Defendants. | **MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION IN LIMINE REGARDING DR. STEVENSON** |

In May of 2009, Dr. Michael Stevenson issued his report in connection with the crash of the Plaintiffs' airplane. Two months later, Dr. Charles Manning, an expert hired on behalf of the Defendants, issued his report related to the same crash. That later report raised issues which had not been addressed by Dr. Stevenson initially. In addressing those new issues, Dr. Stevenson called and spoke with Mr. Rick Moffitt, the former chief engineer of Lycoming Engines. The Defendants now contend that even in refuting the opinions offered by Dr. Manning, Dr. Stevenson should not be allowed to refer to the engineering information received from Mr. Moffitt.

As related by Dr. Stevenson when his deposition was taken on October 2, 2009, there were two material subjects discussed with Mr. Moffitt. First was whether an increase in engine horsepower would affect the connection of the crankshaft gear to the crankshaft. Second was whether the dowel in the end of the crankshaft was just there for alignment purposes or whether it carried torque as the engine turned. We note for

the Court that the Defendants made no reference to this second issue in their Motion or Memorandum in Limine, so we shall address it only briefly.

The pertinent testimony in Dr. Stevenson's deposition begins with defense counsel asking Dr. Stevenson his opinion about a portion of Dr. Manning's report, which portion is highlighted as Exhibit A to this Memorandum. The entire Manning report was attached to the Defendants' Memorandum in their Motion. Pages 116 and 117 of Dr. Stevenson's deposition are set out as Exhibit B. He says he does not agree with Dr. Manning that there is a relationship between higher horsepower and the requirement for a larger bolt. He explains that he did not see anywhere in Service Bulletin 475C that there was any mention of horsepower. He referred to his discussions with Mr. Moffitt and to his understanding of the factual history and the engine timeline. In using the information provided by Mr. Moffitt, Mr. Stevenson was using a "belt and suspenders approach." That is, he used the Moffitt opinion to support his own disagreement with the comment offered by Dr. Manning. It is not expected that Dr. Stevenson will testify about this matter unless Dr. Manning should attempt to offer his own views about what Lycoming requires. Thus far, Dr. Manning has offered no documents or other evidence to verify his own view of Lycoming's requirements about a larger bolt or greater torque.

Defendants have raised a question about whether the engine in the plane which crashed was really a Lycoming engine because there had been some modifications to the engine years before the crash. In making that argument to the Court, the Defendants rely upon the testimony of Sammy Bereznak, a mechanical expert proffered by the Plaintiffs. They quote him as saying that because of the modifications, Lycoming would no longer consider the engine to be a Lycoming engine, but he goes ahead to

unequivocally state that he still considered it a Lycoming engine, referring to the data plate, which has Lycoming's name prominently displayed, and the purchase of parts which come from Lycoming.  See Page 72 of Bereznak's deposition attached as Exhibit C.

Dr. Manning, in the first full paragraph on Page 5 of his discussions, suggests that the dowel pin restrained the torque imposed on the gear until it fractured, at which point the torque was solely borne by the bolt, which then lost its torque.  Dr. Stevenson's initial report had opined that the sequence was that the bolt first came loose and that the striking of the loosened gear against the dowel finally caused the dowel to fracture.  So, the experts disagreed about the sequence of the failure and over the question of whether the dowel pin was actually designed to restrain torque, or whether it was just there to assure proper alignment for timing of the engine, as opined by Dr. Stevenson.  (Dr. Stevenson's testimony at p. 57, pp. 106-109, and p. 118 is attached as Exhibit D.)  That prompted his conversation with Mr. Rick Moffitt to validate what he had already concluded, i.e. that the dowel was there only as a guide.  (Page 109 of Exhibit D.)

In Defendants' Memorandum, they rely heavily upon the case of Eberli v. Cirrus Design Corp., 615 F. Supp.2d 357 (S.D. Fla. 2009).  In that case, the expert, whose testimony was not allowed, relied solely upon the testing and report undertaken by someone else.  The court twice referred to the fact that the expert opinion was based solely on the testing done by another expert.  That is not the case here, since the information from the chief engineer at Lycoming only verified the conclusion reached by

Dr. Stevenson. This is not a case where Dr. Stevenson is merely "regurgitating another expert's opinion."

In summary, it is appropriate in anticipating Dr. Manning's differing opinion that Dr. Stevenson should be allowed to rely upon the information he received from the retired chief engineer of Lycoming.

Respectfully submitted,

s/ W. Duvall Spruill
W. Duvall Spruill, 4269
DSpruill@TurnerPadget.com
Curtis L. Ott, 5939
COtt@TurnerPadget.com
Turner Padget Graham & Laney P.A.
P.O. Box 1473
Columbia, South Carolina  29202
Telephone:  (803) 254-2200

**ATTORNEYS FOR BOBBIE M. SEDBERRY AND JOHN C. SEDBERRY**

March 11, 2010